Curran, Dennis J., J.
Procedural Background
Judith Conway sued Paul W. Power, a workman, for negligence arising out of injuries she sustained when Power failed to properly cover a hole over a floor at her parents’ home. Conway fell through the floor, landing on a stairway below.
Just two weeks after the incident, Power petitioned for chapter 7 bankruptcy protection in which he listed Conway as a creditor. Two months later, the United States Bankruptcy Court adjudged Power as bankrupt and discharged his debts.
On July 25, 2005, Conway filed this lawsuit; Power failed to answer, and was defaulted on Januaiy 30, 2006.[1] Some four years later, Conway moved to reopen the bankruptcy case and be relieved from the automatic stay provisions to permit her to proceed against Power only to the extent of insurance proceeds. The Bankruptcy Court allowed that motion. Conway then filed motions in this court to terminate the stay, allow this tort action to proceed, and assess damages, all on March 12, 2010. A hearing to assess damages was scheduled for April 22,2010. In the intervening period, the latter motion (to terminate the stay and permit this tort action to proceed) was allowed. Power received notice of this hearing, but chose not to contest the issues. (See affidavit of plaintiffs attorney dated April 22, 2010.) Accordingly, the hearing was held, as scheduled.
Based on the credible evidence adduced at that hearing and the reasonable inferences drawn from that evidence, I find the following facts.
FINDINGS OF FACT
On October 25, 2004, Judith Conway, then 39 years old, was at a home being renovated. The contractor usually placed plywood and blue tarpaulin to cover a stairway he was working on; this time, he placed only the tarpaulin. Mrs. Conway fell about six to eight feet down into an open stairwell, landed just two to three stairs from the bottom, struck her head against the basement wall, and lost consciousness. Upon awakening, she immediately complained of severe back pain and right zygoma. She told emergency responders that she “felt confused,” and “can’t think of what she wants to say.” She was immediately transported to the UMass Memorial Medical Center where she was diagnosed with, among other things, a closed head injuiy and back fractures. X-rays revealed oblique and minimally displaced transverse fractures of the lumbar spine at L2, L3, and L4. She was found to have sustained a subgaleal hematoma in the right occipital region. She was prescribed Vicodin and Motrin, advised to follow up with her own physician in several days, but to return to the emergency room if her condition worsened. It did.
Two days later, Mrs. Conway called for an ambulance whose personnel found her complaining of pain to the base of her skull, left arm heaviness, tingling fingers, and neck and significant rib cage pain. She was pale and her abdomen was extremely tender to the touch. In the following days, her physicians noted that her memoiy and consciousness problems are most likely post-concussive; left-sided paresthesias (although she did have some pre-existing numbness in her left hand — see Progress Note dated November 1, 2004); blurring of her left eye vision; headaches, trouble functioning; slowing of her thought processes; memory loss; and a general lessening of her intellectual ability. In the following months, a CT scan revealed a left postereolateral disc protrusion at C6-7; other diagnostic studies revealed a tear in her left shoulder.
Some two months after the fall, Mrs. Conway reported lesser low back pain, but increased neck and left arm pain, and accompanied by a weakening of her left arm. Her physician, Dahari Brooks, M.D., sounded a warning: “At this point in time I am quite concerned about the cervical spine.” Clinic Note dated December 16, 2004.
Eighteen months after the accident, Paul Hart, M.D. recorded that:
This lady is still having marked problems following her accident. She has been to physical therapy which initially gave some limited relief but now has little benefit. She has pain in her mid back which radiates to her chest as well as pain in her lower *86 back. She is still unable to work and the pain has interfered with her personal life . . . Her exam still reveals a lady in pain.
Progress Note dated March 11, 2006. Just three months later, Dr. Hart reported:
She has reached an end point — she is still having ongoing pain, numbness in fingers on left, arm is heavy on left — she is doing PT, acupuncter (sic), chiroptractor (sic) also still has chest pain [ ] [T]he entire left side is sore from neck which is throbbing.
Progress Note dated July 6, 2006. As to her future, Dr. Hart opined:
She is not willing to have surgery — I agree with this. She cannot afford not to work. She cannot do any heavy lifting . . . She is very depressed and still on exam is doing poorly. He (sic) exam still reveals muscle spasm, trigger point areas of tenderness. Clinically, she seems more depressed over her situation. She had an excellent job as a surveyor which she really enjoyed and she was just at the point in her life where she could go back to work. She has a poor prognosis regarding returning to any sort of physical activity.
Id. Finally, Dr. Hart observed that:
My prognosis is guarded. She may not be able to return to work at any job due to this accident. Additionally, he may have chronic headaches as well as upper body pain. Ms. Conway is at high risk to develop arthritis in her spine as a result of the fractures and marked soft tissue damage.
Letter dated May 29, 2005 from Paul L. Hart, M.D. (emphasis added).
These reports paint a grim picture.[2] Nevertheless, at the damages assessment hearing, Mrs. Conway presented a brave front in the face of such chronic pain. In describing her pain, she neither embellished nor exaggerated. She was an impressive witness — and person. With extraordinary courage, she has demonstrated qualities not easily found in others.
Mrs. Conway is 44 years of age and has a life expectancy of 82 years. In other words, if her treating physicians have accurately predicted her future, she can anticipate another 38 years of chronic pain — in her neck, her back, and abdomen. She must also face a lifetime of chronic headaches. Who, among us, would choose such a fate for any amount of money?
ORDER
For the foregoing reasons, judgment shall enter in behalf of Judith Conway against Paul W. Power in the sum of $425,000, plus interest from the date of filing and costs of $1,217.74.

 The Bankruptcy Court stayed these actions; notwithstanding that stay, the Clerk’s Office defaulted Power on January 30, 2006. The issue of whether that default was effective may well have been cured by Power’s attorney’s representation to plaintiffs counsel that, although he received notices of the plaintiffs motion to terminate the stay and assess damages, he would not appear to oppose them. Given that representation, I will treat Power’s waiver in this fashion, subject to any motion to reconsideration he may later file.

 In addition, she has sustained over $62,000 in medical bills.